## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHELSEA TURNER,
*Plaintiff*,

v.

CONNECTICUT LOTTERY CORPORATION
AND GREGORY SMITH,
*Defendant.*

No. 3:20-cv-1045 (VAB)

### RULING AND ORDER ON MOTION TO DISMISS

Chelsea Turner ("Plaintiff") has sued Gregory Smith and the Connecticut Lottery Corporation ("Defendants") under Connecticut common law, § 31-51q of the Connecticut General Statutes, and 42 U.S.C. § 1983 for allegedly improper discipline during her employment at the Connecticut Lottery Corporation, which allegedly led to her resignation, in violation of her constitutional rights as guaranteed under the First Amendment to the U.S. Constitution and parallel provisions of the state constitution. *See* Second Am. Compl., ECF No. 1-1 (July 23, 2020) ("Second Am. Compl."). Defendants have moved to dismiss the suit against Mr. Smith individually and against all Defendants for failure to state a claim upon which relief can be granted.

For the following reasons, Defendants' motion to dismiss Ms. Turner's claim under § 31-51q of the Connecticut General Statutes is **DENIED** as to the Lottery but **GRANTED** as to Mr. Smith individually (Count One). Defendants' motion to dismiss further is **DENIED** as to Ms. Turner's claims of defamation (Count Six) and violation of First Amendment rights under 42 U.S.C. § 1983 (Count Seven) for all Defendants.

Defendants' motion to dismiss Ms. Turner's common law claims of constructive discharge (Count Two), tortious interference with contract (Count Three), negligent infliction of

emotional distress (Count Four), and intentional infliction of emotional distress (Count Five) is **GRANTED** as to all Defendants.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Ms. Turner allegedly worked for the Connecticut Lottery Corporation (the "Lottery"), "a quasi-public state agency created by Connecticut Statute" in Rocky Hill, Connecticut, which "operat[es] and manag[es] a lottery and similar games." Second Am. Compl. ¶¶ 1–2, 4. During her employment at the Lottery, she allegedly held several positions, including, most recently, the position of Vice President. *Id.* ¶¶ 1, 4.

Defendant Gregory Smith allegedly has been employed by the Lottery since approximately July 2018 and currently serves as its President and Chief Executive Officer ("CEO"). *Id.* ¶ 2.

In or about 2013 or 2014, Ms. Turner held a different position at the Lottery as the "Director of Governmental, Regulatory and Operational Affairs." *Id.* ¶ 4. Allegedly, while serving in this capacity, Ms. Turner "became concerned about the conduct of Frank Farricker, who was then the Chairman of the Lottery Board of Directors." *Id.* Her reasons for concern included that Mr. Farricker allegedly directed Ms. Turner "to cease governmental relations activity in favor of legislation intended to authorize a new Lottery product"; "pressured" the agency's former President "to enter into a sponsorship agreement with [a casino] on terms that Ms. Turner believed to be unfavorable to the Lottery"; and "sought to have the Lottery meet with a businessman" associated with a company with which a "personal friend" of Mr. Farricker's was associated. *Id.* ¶ 5.

2

Sometime in 2014, Ms. Turner allegedly "consulted a friend who works for the Federal Bureau of Investigation (the 'FBI')[] to seek guidance about whether and how she should pursue her discomfort about Mr. Farricker's conduct," which allegedly made her uncomfortable. *Id.* ¶¶ 5–6. Ms. Turner's friend "referred her to FBI agents", with whom she met, allegedly "one or two times, to the best of her recollection[.]" *Id.* ¶ 7. Ms. Turner alleges that "[she] does not recall exactly which actions by Mr. Farricker were the subject of her discussions with the FBI." *Id.* ¶ 6.

Allegedly, the agents with whom Ms. Turner met "caused the FBI to conduct an investigation of Mr. Farricker's conduct[.]" *Id.* ¶ 7.

Several years later, on July 9 and 10, 2019, "Ms. Turner [allegedly] was compelled to testify at a hearing conducted by the Connecticut Commission on Human Rights and Opportunities ('CHRO') regarding a complaint brought by a former Lottery employee[.]" *Id.* ¶ 8. At the hearing, she allegedly "was compelled to describe concerns she had with Mr. Farricker's conduct" and reveal her "consult[ation with] the FBI" about those concerns. *Id.* ¶ 9.

On July 12, 2019, Mr. Smith allegedly "told Ms. Turner by letter . . . that she was placed on administrative leave effective July 15, 2019." *Id.* ¶ 14. The authority allegedly cited for imposing the administrative leave was Connecticut Agencies Regulations § 5-240-5a(f), *see id.*, which states:

> An appointing authority may place an employee on leave of absence with pay for up to fifteen (15) days to permit investigation of alleged serious misconduct which could constitute just cause for dismissal under C.G.S. Section 5-240-1a (c). Such leave shall only be utilized if the employee's presence at work could be harmful to the public, the welfare, health or safety of patients, inmates or state employees or state property. Following a decision to place the employee on such leave, the appointing authority shall provide written notice to the employee stating the reasons for the leave, the effective date of the leave and the duration of the leave which shall not exceed fifteen (15) days.

3

Conn. Agencies Regs. § 5-240-5a(f) (2019). Allegedly, the letter did not include any statement of the reasons for the leave. Second Am. Compl. ¶ 16. In addition, Mr. Smith allegedly "never explained to Ms. Turner, in writing or otherwise, the reason why she was suspended" or "how her presence at work could be harmful to the public, the welfare, health or safety of patients, inmates or state employees or state property[,]" as required by Connecticut Agencies Regulations § 5-240-5a(f). *See id.* ¶¶ 16–17 (internal quotation marks and citation omitted).

Shortly after the suspension was imposed, Mr. Smith allegedly "instructed [Ms. Turner] to return to the Lottery headquarters to turn in her key[.]" *Id.* ¶ 28. When she did so, "Lottery security officers met her in the headquarters parking lot to take her key and give her a box of her personal possessions, [. . .] when Lottery personnel were leaving work . . . ." *Id.*

On July 19, 2019, several days after Ms. Turner was placed on administrative leave, the Hartford Courant allegedly "published a story asserting that the Lottery had released Mr. Smith's July 12, 2019[] letter[.]" *Id.* ¶ 30.

Approximately a month later, on August 14, 2019, Mr. Smith allegedly was called to testify at a CHRO hearing. *Id.* ¶ 19. He allegedly stated under oath that he "did not tell the board" of the Lottery the reasons for which Ms. Turner was suspended, but that those reasons were "known to [him][.]" *Id.*

On September 5, 2019, the Lottery, with Mr. Smith's alleged authorization, allegedly "retained the law firm Halloran and Sage ('Halloran') . . . to investigate the statements made by Ms. Turner at the July 9, 2019[] CHRO hearing." *Id.* at 9, 10 ¶¶ 33, 41. The Report allegedly produced from the investigation allegedly "falsely cast Ms. Turner in a negative light[,]" and the Lottery allegedly made the report "publicly available [on its] web site and provid[ed] copies to Lottery employees." *Id.* at 9 ¶¶ 39–40. The Hartford Courant allegedly published an article

regarding the contents of the report, which "included [] remarks by Mr. Farricker against Ms. Turner." *Id.* at 9–10 ¶ 40.

On October 15, 2019, Mr. Smith allegedly wrote to Ms. Turner to inform her that "the administrative leave condition [was] no longer in place," and that her continued absence from work at the Lottery was, as of that date, "based solely on" medical leave she had been taking contemporaneously with the suspension. *Id.* ¶ 21.

Ms. Turner thereafter left the Lottery and allegedly began a new job in Massachusetts with "significantly less" compensation, which allegedly "will cause her to incur significant housing, travel and other expenses[.]" *Id.* at 11 ¶¶ 46–47. Ms. Turner further alleges that she has suffered "anxiety", "depression", "stress", "mental distress", "public[] humiliat[ion]", and "damage[] [to] her professional reputation" as a result of the improper discipline she faced. *Id.* ¶¶ 23, 27.

### B.  Procedural Background

On January 13, 2020, Ms. Turner filed a Complaint in Connecticut Superior Court, Judicial District of Hartford, alleging five counts against Defendants. *Chelsea Turner v. Conn. Lottery Corp. & Gregory Smith*, No. HHD-CV20-6123865S (Conn. Super. Ct. Jan. 13, 2020); *see also* Notice of Removal at 3–15, ECF No. 1-1 (July 23, 2020).

On March 13, 2020, Plaintiff filed her First Amended Complaint. *See* Statement Regarding Standing Order in Removed Cases, ECF No. 6 (July 23, 2020); *see also* Notice of Removal at 16–30, ECF No. 1-1 (July 23, 2020).

On July 2, 2020, Plaintiff filed a request for leave to again amend the Complaint, and Defendants did not object to this Request within fifteen (15) days; therefore, the amendment was deemed to have been filed by consent under Connecticut Practice Book § 10-60. Statement

Regarding Standing Order in Removed Cases, ECF No. 6 (July 23, 2020); *see also* Notice of

Removal, ECF No. 1-1 (July 23, 2020). Ms. Turner accordingly filed her Second Amended

Complaint. Notice of Removal at 31–49, ECF No. 1-1 (July 23, 2020) ("Second Am. Compl.").

On July 23, 2020, Defendants removed the action to federal court based on Plaintiff's

Second Amended Complaint. *See* Notice of Removal, ECF No. 1 (July 23, 2020).

On September 8, 2020, Defendants filed a motion to dismiss the Second Amended

Complaint. Mot. to Dismiss Pl.'s Second Am. and Revised Compl., ECF No. 18 (Sept. 8, 2020);

Mem. in Support of Defs.' Mot. to Dismiss, ECF No. 18-1 (Sept. 8, 2020) ("Mot. to Dismiss").

On October 20, 2020, Plaintiff filed a memorandum in opposition to Defendants' motion

to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 26 (Oct. 20, 2020) ("Opp'n").

On November 10, 2020, following a series of discovery disputes, the Court held a

discovery conference with the parties. Min. Entry, ECF No. 33 (Nov. 10, 2020).

On November 17, 2020, Defendants filed a reply in further support of their motion to

dismiss. Reply in Further Support of Defs.' Mot. to Dismiss, ECF No. 35 (Nov. 17, 2020)

("Reply").

On November 25, 2020, Ms. Turner filed a motion for leave to file a sur-reply to

Defendants' reply to her objection to the Defendants' motion to dismiss, *see* Pl.'s Mot. for

Permission to File Sur-Reply, ECF No. 36 (Nov. 25, 2020), which the Court granted, *see* Order

Granting Mot. for Leave to File Sur-Reply, ECF No. 37 (Nov. 29, 2020). Ms. Turner filed her

sur-reply on December 4, 2020. Pl.'s Sur-Reply Br. Regarding Mot. to Dismiss, ECF No. 38

(Dec. 4, 2020).

On April 8, 2021, the Court held another discovery conference with the parties regarding

ongoing discovery disputes. Min. Entry, ECF No. 49 (Apr. 8, 2021).

On June 29, 2021, Ms. Turner filed a motion to stay proceedings until August 9, 2021.

Mot. to Stay Until August 9, 2021, ECF No. 54 (June 29, 2021). The Court granted that motion,

and proceedings were stayed accordingly. *See* Order Granting Mot. to Stay Proceedings until

August 9, 2021, ECF No. 55 (June 30, 2021).

On August 13, 2021, the parties filed a joint status report requesting further adjudication

of the issues in dispute by this Court. *See* Joint Status Report, ECF No. 56 (Aug. 13, 2021).

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon

which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working

principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." (internal citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Ms. Turner's Second Amended Complaint alleges seven causes of action: (1) wrongful discipline under § 31-51q of the Connecticut General Statutes[1]; (2) constructive discharge; (3)

---

[1] In addition to her claim under 42 U.S.C. § 1983, Ms. Turner's Section 31-51q claim requires interpretation of the First Amendment, and, therefore, this Court has federal question jurisdiction over this case. *See, e.g.*, *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 115–16 (2d Cir. 2004) (finding that the district court had jurisdiction over a plaintiff's claim under section 31-51q because "a federal question was implicated on the face of his well-pleaded complaint," as the plaintiff had "allege[d] on the face of his well-pleaded complaint that the Board [of Education] violated his rights as established, under section 31-51q, by either the United States or the Connecticut

tortious interference with contractual relations; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; (6) defamation; and (7) violation of 42 U.S.C. § 1983. *See* Second Am. Compl.

Defendants have moved to dismiss Ms. Turner's Second Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6), including as to Mr. Smith individually and to the Defendants collectively. *See* Mot. to Dismiss; Reply.

Defendants set forth several arguments to support a motion to dismiss individual claims against Mr. Smith, including that: (1) Mr. Smith was not an employer and cannot be held liable for conduct in violation of  § 31-51q or a constructive discharge claim under state common law; (2) Ms. Turner's official capacity claims against Mr. Smith are duplicative of claims against the Lottery and should be dismissed; (3) Mr. Smith has qualified immunity from Ms. Turner's individual capacity claims; (4) the § 1983 claim fails to allege personal involvement by Mr. Smith; and (5) Mr. Smith has statutory immunity pursuant to Connecticut General Statutes § 1-125 from Ms. Turner's state law claims.[2] *See* Mot. to Dismiss; Reply.

In addition, Defendants raise multiple arguments to support a motion to dismiss the counts as to all Defendants, including that: (1) Ms. Turner failed to set forth the elements of a claim under § 31-51q; (2) Ms. Turner cannot establish that her termination contravenes an important public policy, as required by Connecticut law for a claim of constructive discharge; (3) Ms. Turner has failed to demonstrate "extreme or outrageous" conduct or an "unreasonable risk"

---

Constitution[,]" and noting that "[c]ourts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action in the cases before them").

[2] Defendants further argue that Count Three, alleging tortious interference, is alleged against Mr. Smith only and should therefore be dismissed because he is immune. Defendants further argue that the tortious interference with contract claim should be dismissed because Ms. Turner cannot demonstrate that she had a contract with the Lottery, and, even if she did, Mr. Smith was acting as an agent of the Lottery and therefore cannot be held liable for interfering with a contract to which he was a party. *See* Mot. to Dismiss at 9 n.4., 13.

of harm, as required for state law claims of intentional and negligent infliction of emotional

distress, respectively; (4) Ms. Turner cannot establish that the allegedly defamatory letter

contained untrue statements; and (5) Ms. Turner fails to allege the denial of any rights secured by

federal law or the Constitution, as required for her claims under 42 U.S.C. § 1983. *See* Mot. to

Dismiss; Reply.

The Court will address the motion to dismiss as to each of Ms. Turner's seven counts,

including: (1) unlawful discipline under § 31-51q (Count One); (2) constructive discharge under

Connecticut common law (Count Two); (3) tortious interference with contractual relations

(Count Three); (4) negligent infliction of emotional distress (Count Four); (5) intentional

infliction of emotional distress (Count Five); (6) defamation (Count Six); and (7) 42 U.S.C. §

1983 (Count Seven). As to Mr. Smith's individual defenses, including that he does not qualify as

an employer under § 31-51q and is entitled to immunity for suits brought against him in his

official and individual capacities under 42 U.S.C. § 1983, those defenses will be addressed in the

sections relating to § 31-51q and § 1983 respectively. In the final section, the Court will address

whether Mr. Smith is entitled to statutory immunity under Connecticut General Statutes § 1-125

for any remaining state law counts.

### A.  Count One: Connecticut General Statutes § 31-51q

Connecticut General Statutes § 31-51q provides that:

> Any employer . . . who subjects any employee to discipline or
> discharge on account of the exercise by such employee of rights
> guaranteed by the first amendment to the United States Constitution
> or section 3, 4 or 14 of article first of the Constitution of the state,
> provided such activity does not substantially or materially interfere
> with the employee's bona fide job performance or the working
> relationship between the employee and the employer, shall be liable
> to such employee for damages caused by such discipline or
> discharge[.]

Conn. Gen. Stat. § 31-51q. To establish liability under this statute, Ms. Turner must show "protected activity, adverse action, a causal relationship between the activity and the adverse action, and that the protected activity did not interfere with the central purposes of the employment relationship." *Winik–Nystrup v. Manufacturers Life Ins. Co.*, 8 F. Supp. 2d 157, 159 (D. Conn. 1998); *see also McClain v. Pfizer, Inc.*, 692 F. Supp. 2d 229, 241 (D. Conn. 2010) (citing the same).

Ms. Turner argues that her conversation with the FBI was protected free speech, and that she was improperly disciplined for her exercise of that right when she was placed on administrative leave. Second Am. Compl. at 8 ¶¶ 32–37; Opp'n at 17–20.

Defendants argue that paid administrative leave does not, as a matter of law, constitute adverse employment action, and that Ms. Turner has failed to plead that "her speech did not substantially or materially interfere with her job performance or her relationship with the Lottery[.]" Mot. to Dismiss at 14–17. As to the claim under § 31-51q against Mr. Smith individually, Defendants further argue that he cannot be held liable because Ms. Turner does not sufficiently allege that Mr. Smith was her employer. *Id.* at 6–8.

The Court disagrees.

### 1. Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citing *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 90 (citing *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations and citation omitted)). In *Joseph*, the Second Circuit reasoned that

"administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Id.* at 91. That rule, however, "is not an absolute one," and "suspension with pay may, in some circumstances, rise to the level of an adverse employment action." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

> The relevant question is . . . whether the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment. Paid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies.

*Id.* (citing *Joseph*, 465 F.3d at 92 n.1).

Ms. Turner has alleged that she was not placed on leave in a reasonable manner, even if she was paid during the suspension. Connecticut Agencies Regulations § 5-240-5a(f) permits paid administrative leave "for up to fifteen (15) days to permit investigation of alleged serious misconduct which could constitute just cause for dismissal[.]" Conn. Agencies Regs. § 5-240-5a(f). Ms. Turner, however, allegedly was placed on administrative leave for three months.[3] Taking these allegations as true, and viewing them in the light most favorable to the Plaintiff, the length of the administrative leave exceeded regulatory limits and thereby goes "beyond an employee's normal exposure to disciplinary policies." *Brown*, 673 F.3d at 150 (citing *Joseph*, 465 F.3d at 92 n.1).

Further, in *Joseph*, the Second Circuit noted that, although paid administrative leave generally will not constitute adverse employment action, "an exceptionally dilatory investigation

---

[3] Ms. Turner allegedly was placed on administrative leave effective July 15, 2019. Second Am. Compl. ¶ 14. Allegedly, it was not until over a month later, on September 5, 2019, that the Lottery allegedly retained a law firm to conduct an investigation. *Id.* at 9–10 ¶¶ 33, 41. The report allegedly resulting from that investigation, moreover, allegedly was not published until December 12, 2019, *see id.* at 9 ¶ 34, and, in the meantime, Ms. Turner allegedly remained on administrative leave until October 15, 2019. *Id.* at ¶ 21.

might constitute a material change in the terms and conditions of employment." *Joseph*, 465 F.3d at 92. In *Joseph*, the Court found that a five-month delay "did not materially alter the terms and conditions of . . . employment[,]" which is a longer delay than the one alleged in this case. *Id.* at 91–93. The Second Circuit, however, in *Joseph* reviewed a decision on a motion for summary judgment, not a motion to dismiss, and further reasoned that, although the delay in *Joseph* was "troubling", it was not unreasonable where the plaintiff faced "multiple [serious] allegations" leading to felony assault charges and "refus[ed] to cooperate" with agency investigators. *Id.* No such serious allegations are present here. Ms. Turner therefore plausibly has alleged that the administrative leave was adverse.[4]

Accordingly, Defendants' motion to dismiss on these grounds will be denied.

### 2.  Substantial or Material Interference

Defendants also challenge Ms. Turner's claim under § 31-51q on the grounds that she fails to plead lack of substantial interference with her working relationship with her employer.

To state a claim under § 31-51q, "[t]he majority of the [Connecticut] Superior Court decisions and decisions from the United States District Court for the District of Connecticut hold that the plaintiff must plead and prove lack of substantial interference[.]" *Miller v. Hous. Auth. of City of New Haven*, No. 3:13-cv-1855 (JBA), 2014 WL 2871591, at *9 (D. Conn. June 24, 2014) (citing *King v. The Connection, Inc.*, No. CV106015682S, 2011 WL 3211250, at *5 (Conn. Super. Ct. June 20, 2011)). This requirement derives from the text of the statute, which only

---

[4] Given the allegedly extended period of administrative leave, beyond the limits of Connecticut regulations, and the delayed investigation, the Court does not reach Plaintiff's argument that the alleged constitutional violation—i.e., of Ms. Turner's free speech rights—constitutes "more" under *Joseph*, 465 F.3d at 90. That question was left open in *Brown*, and the Court need not reach it today. *See Brown*, 673 F.3d at 151 (rejecting plaintiff's "argument, which [the court] understand[s] [as] a[n] . . . effort[] to bypass *Joseph*[,]" that "[plaintiff's] suspension with pay was unreasonable (*i.e.,* adverse) [because] the [defendant] violated his equal protection rights[,]"where the plaintiff "offer[ed] no proof of [the alleged equal protection violation]").

protects employees from adverse employment action for exercise of free speech rights where "such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer . . . ." Conn. Gen. Stat. § 31-51q.

Defendants argue that Ms. Turner has "fail[ed] to plead that her discussions with the FBI and her subsequent testimony regarding those discussions did not substantially interfere with her working relationship with the Lottery[.]" Mot. to Dismiss at 17.

The Court disagrees.

The requirement that a plaintiff plead lack of substantial interference is not a formalistic one, but, rather, lack of substantial interference can be inferred from specific factual allegations in a properly pleaded complaint. *See, e.g.*, *Miller*, 2014 WL 2871591 at *9 (rejecting Defendants' "argu[ment] that[,] because Plaintiff's comments damaged the relationship between [the defendant-employer and plaintiff-employee], she has failed to plead noninterference" where the complaint "alleged sufficient facts to show that her speech did not initially interfere with her relationship with her employer"); *Weinstein v. Univ. of Connecticut*, No. HHDCV116027112S, 2018 WL 2222131, at *8 (Conn. Super. Ct. Apr. 25, 2018) (plaintiff's allegation that "he expressed his determination to do his utmost to support the Dean's changes to the program regardless of his views and to make the program as successful as possible provides the basis for an inference of no substantial or material interference with his job" (internal quotation marks omitted)). Ms. Turner alleges in her Second Amended Complaint that, following her discussions with the FBI, she continued to be employed by Lottery, and, indeed, was appointed to the position of Vice President. Second Am. Compl. ¶¶ 1, 4–7. Ms. Turner therefore has set forth

14

facts that, when taken as true, demonstrate that she has pled a lack of substantial interference under § 31-51q.

Accordingly, Defendants' motion to dismiss Ms. Turner's claim under § 31-51q on these grounds will be denied.

### 3.   Individual Liability as to Mr. Smith

Defendants further argue that, even if Count One is not dismissed for failure to state a claim, that Mr. Smith does not qualify as an "employer" under § 31-51q and, therefore, cannot be held liable individually under this count. Mot. to Dismiss at 6–8.

The term "employer" as used in § 31-51q is not defined in the statute. *Cf.* Conn. Gen. Stat. § 31-51m(a)(2) (defining "employer" as "a person engaged in business who has employees, including the state and any political subdivision of the state"). Connecticut courts have held that, under § 31-51q, an "employer" is the employing entity itself, and not a supervisor or other employee. *See Nyenhuis v. Metro. Dist. Comm'n*, 604 F. Supp. 2d 377, 384–85 (D. Conn. 2009) (granting motion to dismiss § 31-51q claim against sergeant supervisor and fellow police officer); *see also Mercer v. Schriro*, 337 F. Supp. 3d 109, 141 (D. Conn. 2018) (collecting cases). Here, Ms. Turner has alleged that Mr. Smith wrote the letter that started and ended her period of paid administrative leave. Second Am. Compl. ¶ 14; Opp'n at 5–9. While Connecticut Agency Regulations may authorize Mr. Smith to impose this suspension and to dismiss Ms. Turner for just cause,[5] and Mr. Smith allegedly imposed the suspension, which allegedly was improper and unlawful, at issue in this case, this is an insufficient basis for determining that Mr. Smith is an

---

[5] *See* Conn. Agency Regs. § 5-240-5a(f) (an "appointing authority" may place employee on a leave of absence); Conn. Agency Regs. § 5-240-5(a) ("An appointing authority may dismiss an employee for just cause."); *see also* Conn. Agency Regs. § 5-240-1a(a) (defining "appointing authority" as the "board, commission, officer, commissioner, person or group of persons having the power to make appointments by virtue of a statute").

employer under § 31-51q. [6] *See Nyenhuis*, 604 F. Supp. 2d at 384–85 (D. Conn. 2009)

(dismissing § 31-51q claim against plaintiff's supervisor and co-employee individually);

*D'Angelo v. McGoldrick*, No. CV 93 0063904, 1995 WL 476843, at *6 (Conn. Super. Ct. Aug. 3,

1995), *aff'd on other grounds*, 239 Conn. 356 (1996) (in suit against public employee, "plaintiffs

cannot prevail on their claim against the [individual defendants][,] [as] the statute clearly

authorizes a cause of action against an employer[,] [which is][,] in this case, the State of

Connecticut. The Court has no jurisdiction over any other person or entity under the statute."); *cf.*

*Holub v. Babcock*, No. CV 950319683, 1996 WL 409255, at *4 (Conn. Super. Ct. June 27,

1996) (denying motion to strike "as to the individual defendants on the ground that they are not

'employers' pursuant to General Statutes § 31-51q . . . [because the defendant] owned the

company which employed the plaintiff").

Accordingly, Defendants' motion to dismiss Count One on these grounds will be denied

as to the Connecticut Lottery Corporation, but will be granted as to Mr. Smith individually.

### B. Count Two: Constructive Discharge

"As a general matter, employment relationships in Connecticut are 'at-will' absent a

contract to the contrary." *Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92, 95 (D. Conn.

---

[6] Some Connecticut state courts have implied that an individual with the authority to make hiring decisions could be held liable individually as an employer under § 31-51q, even where they are not an individual employer, *see, e.g.*, *Maisano v. Congregation Or Shalom*, No. NHCV074027175S, 2009 WL 415696, at *3 (Conn. Super. Ct. Jan. 26, 2009) (releasing individual defendants, including president and director, from liability under § 31-51q who "merely acquiesced to [the executive director's] termination of the plaintiff" and who did not "actually [have] the power to [terminate the plaintiff's employment] themselves" in suit where executive director was not sued individually (internal quotation marks omitted)); *D'Angelo v. McGoldrick*, No. CV 93 0063904, 1995 WL 476843, at *6 (Conn. Super. Ct. Aug. 3, 1995), *aff'd on other grounds*, 239 Conn. 356 (1996) (dismissing individual defendant who "did not pay the salaries or wages of the plaintiffs" or "have authority to hire or discharge them"). No court, however, has held that this authority makes another employee of a public or quasi-public entity an employer of that public or quasi-public entity. And the Court declines to do so here, especially where Ms. Turner has not pled specific facts regarding Mr. Smith's authority to terminate, suspend, and/or pay her separate from the Lottery or its Board. *Cf. Nordby v. Anesthesia Assocs. of Torrington, LLC*, No. CV094008584S, 2010 WL 1495695, at *4 (Conn. Super. Ct. Feb. 11, 2010) (dismissing claim against individual defendants where there were "no allegations that any individual defendant . . . acted as an employer somehow separate from the [employing entity, an LLC]").

2007) (citing *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697–98 (2002)).

Connecticut law only recognizes a common law exception to at-will employment "if the former

employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety

is derived from some important violation of public policy." *Sheets v. Teddy's Frosted Foods,*

*Inc.*, 179 Conn. 471, 475 (1980); *see also Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396,

404 (D. Conn. 2013) (citing the same).

> In general, under Connecticut law, in order to state a claim for
> common law wrongful discharge in violation of public policy, a
> plaintiff must: (1) plead that the alleged conduct by the employer
> contravenes public policy and (2) demonstrate that the plaintiff is
> otherwise without remedy and that permitting the discharge to go
> unredressed would leave a valuable social policy to go unvindicated.

*Id.* at 405 (quoting *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 159–60 (2000)) (internal

quotation marks omitted).

The public policy exception, however, is "a narrow one," *Parsons v. United Tech. Corp.*,

243 Conn. 66, 79 (1998), and "courts should not lightly intervene to impair the exercise of

managerial discretion or to foment unwarranted litigation," *Sheets, Inc.*, 179 Conn. at 477, and

"whether a challenged discharge violates public policy . . . is a question of law to be decided by

the court." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 407 (2016) (quoting

*Faulkner v. United Techs. Corp.,* 240 Conn. 576, 588 (1997)). When a court evaluates claims of

wrongful discharge in violation of public policy, it "look[s] to see whether the plaintiff has

alleged that his discharge violated any explicit statutory or constitutional provision or whether he

alleged that his dismissal contravened any judicially conceived notion of public policy."

*Thibodeau*, 260 Conn. at 699 (internal citations and alterations omitted).

Connecticut courts have allowed plaintiffs to state claims of common law wrongful

discharge in violation of public policy where plaintiffs point to explicit statutory language giving

rise to the public policy at issue. *See, e.g.*, *Faulkner*, 240 Conn. at 585–86 (1997) ("[C]laims

brought pursuant to the public policy imitation on the at-will employment doctrine can be

predicated on the violation of public policy expressed in [state and] federal statute[s][.]");

*Parsons*, 243 Conn. at 77–80 (allowing a wrongful discharge claim where "plaintiff sought to

establish, by reference to several state statutes concerning workplace safety, that Connecticut has

a general public policy requiring each employer to provide its employees with a reasonably safe

workplace"); *Antinerella v. Rioux*, 229 Conn. 479, 493 (1994) (permitting a wrongful discharge

claim where it "genuinely involve[d] the mandates of public policy derived directly from state

statutes"), *overruled on other grounds by Miller v. Egan*, 265 Conn. 301 (2003).

Ms. Turner argues that her suspension violated public policy protecting whistleblowers as

expressed in Connecticut General Statutes § 31-51m,[7] the First Amendment to the United States

---

[7] The relevant provisions of Connecticut General Statutes § 31-51m state the following:

> (b) No employer shall discharge, discipline or otherwise penalize any employee because (1) the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, (2) the employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action, or (3) the employee reports a suspected incident of child abuse or neglect pursuant to sections 177a-101a to 17a-101d, inclusive, or 17a-103. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false.

> (c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by

Constitution, and Article First of the Constitution of the State of Connecticut. Second Am. Compl. at 8 ¶¶ 32–37; Opp'n at 20–23.

Defendants argue that Ms. Turner's claim of constructive discharge is barred because "Conn. Gen. Stat. § 31-51m and § 31-51q provide . . . exclusive remedies for the public policy protections expressed in those statutes." Reply at 8–10 (emphasis omitted).[8]

The Court agrees.

In *Burnham*, the Connecticut Supreme Court held that the statutory remedy available in § 31-51m precludes common law wrongful discharge claims based on alleged violations of the public policy embodied in that statute. *See Burnham*, 252 Conn. at 158 (Even if a "plaintiff [could] present evidence that . . . her termination violated the public policy embodied in § 31-51m," the plaintiff's "common-law wrongful discharge claim would be precluded by § 31-51m(c), which provides a statutory remedy for employer conduct prohibited under § 31-51m(b)."). Ms. Turner's Second Amended Complaint alleges that her discharge violated the public policy expressed by § 31-51m. *See* Second Am. Compl. at 8 ¶¶ 33–37. That same statute, however, provides a statutory remedy in § 31-51m(c), and, under *Burnham*, this statutory remedy precludes a common law wrongful discharge claim brought under the same legal theory.

---

the court. Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal.

Conn. Gen. Stat. § 31-51m(b)-(c).

[8] Defendants also argue that Ms. Turner has failed to plead her second count appropriately, as that constructive discharge is not an independent cause of action. *See* Mot. to Dismiss at 18–19; Reply at 8. The Court interprets Ms. Turner's count of constructive discharge as a common-law action for wrongful discharge. *Cf. Seery v. Yale-New Haven Hosp.*, 17 Conn. App. 532, 539–40 (1989) (the Connecticut Supreme Court has recognized "a common law cause of action in tort for discharge if the former employee can prove a demonstrably improper reason for dismissal," including in incidences of alleged "constructive discharge" (internal quotation marks, citation, and emphasis omitted)). Defendants further dispute that the alleged actions violate an important public policy. *See* Mot. to Dismiss at 18–19; Reply at 8–9. Because the Court finds that the statutory remedy available in § 31-51m precludes the common law wrongful discharge claim, the Court does not address that argument here.

*Burnham*, 252 Conn. at 158. Ms. Turner therefore is barred from pursuing a common law

constructive discharge action based on the public policy contained within § 31-51m.

Ms. Turner's claim of wrongful discharge for exercising her free speech rights fails for

similar reasons. As demonstrated by the Court's holding in *Burnham* regarding the exclusivity of

the statutory remedy in § 31-51m, a plaintiff cannot recover for common law wrongful discharge

where a statutory remedy exists that is equivalent to the plaintiff's common-law cause of action.

*See id.* at 163 ("Because plaintiff had a [statutory] remedy . . . for the . . . discharge she had

alleged, she was not 'otherwise without [a] remedy' . . . and her common-law cause of action for

wrongful discharge is precluded (quoting *Atkins v. Bridgeport Hydraulic Co.*, 5 Conn. App. 643,

648 (1985))). Ms. Turner's wrongful discharge count, to the extent that it seeks to preserve her

constitutional free speech rights, is based on the same public policy protected by § 31-51q, and

therefore, precluded by the remedy contained within that statute. *See Dighello v. Thurston

Foods, Inc.*, 307 F. Supp. 3d 5, 29 (D. Conn. 2018) ("[W]hen the wrongful discharge count is

*dissimilar* from that of an employee's constitutionally protected right of free speech [alleged in a

claim under § 31-51q], the plaintiff should be free to explore these two theories of his claim."

(internal citation omitted) (emphasis added)); *cf. Mirto v. Laidlaw Transit, Inc.*, No. 334231,

1993 WL 137627, at *3 (Conn. Super. Ct. Apr. 20, 1993) (finding that plaintiff's common-law

wrongful discharge claim "based upon the provision of safe and adequate transportation to . . .

school children" should not be precluded by plaintiff's § 31-51q claim "based upon the

preservation of free speech"). Although Ms. Turner alleges different adverse employment actions

in each count—unlawful disciplinary suspension in Count One and unlawful constructive

discharge in Count Two—the theory that the allegedly adverse employment actions violated her

constitutional free speech rights is the same in both. Ms. Turner therefore has failed to state a claim for constructive discharge under Connecticut common law.

Accordingly, Ms. Turner's constructive discharge claim will be dismissed.

### C.  Count Three: Tortious interference with contract

Under Connecticut law, a successful action for tortious interference with contract requires satisfaction of three elements: "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Am. Diamond Exch., Inc. v. Alpert*, 101 Conn. App. 83, 90 (2007) (quoting *Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 255 Conn. 20, 27 (2000)).

In general, such suits are prohibited between employees of a business. *See Kollar v. Allstate Ins. Co.*, No. 3:16-CV-01927 (VAB), 2017 WL 3222535, at *10 (D. Conn. July 28, 2017) (collecting cases). Where the plaintiff pleads, however, that another employee "did not act legitimately within [their] scope of duty [and] used corporate power improperly for personal gain[,]" a claim for tortious interference may be brought against the agent individually. *Wood & Bricks, LLC v. TD Dev., LLC*, No. 3:16-CV-123 (MPS), 2018 WL 6605623, at *2 (D. Conn. Dec. 17, 2018) (quoting *Metcoff v. Lebovics*, 123 Conn. App. 512, 520–21 (2010)); *see also Malik v. Carrier Corp.*, 202 F.3d 97, 109 (2d Cir. 2000) ("[A]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his

scope of duty but used the corporate power improperly for personal gain." (internal citation omitted)).

Ms. Turner argues that Mr. Smith can be held individually liable for tortious interference with her contract with the Lottery, as he was acting outside the scope of his duties with the Lottery when he improperly suspended her. Opp'n at 14–16.

Defendants argue that Ms. Turner's claim of tortious interference should be dismissed because, even if Mr. Smith is not named in his official capacity, he is an "agent" of the Lottery, and Ms. Turner failed to plead that an employment contract exists between herself in the Lottery; that she incurred actual loss; that Mr. Smith was acting outside his corporate duties; or that he suspended Ms. Turner for personal gain. Mot. to Dismiss at 2, 9 n.4; Reply at 5–6.

The Court agrees.

Ms. Turner has alleged that a business relationship—namely, an employment relationship—existed between herself and the Lottery; that Mr. Smith was aware of that business relationship; and that she incurred "actual loss", including to her reputation, due to Mr. Smith's interference. Second Am. Compl. 11–12 ¶¶ 36–45. Ms. Turner also alleges that Mr. Smith committed the alleged acts outside the scope of his employment where he allegedly suspended her improperly for exercising protected speech rights. *See id.*; Opp'n at 15–16.

These allegations, however, are conclusory. *See Iqbal*, 556 U.S. at 678  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations

omitted)). Ms. Turner alleges in her Second Amended Complaint that no reason was provided for her allegedly unlawful suspension, and that Mr. Smith stated under oath that he "did not tell the board" of the Lottery the reasons for which Ms. Turner was suspended. *Id.* ¶ 19. But these allegations do not indicate how Mr. Smith acted to achieve personal gain. The retention of a law firm to conduct an investigation "for the purpose of broadly disseminating the inaccurate message that Ms. Turner lacked credibility", *see* Second Am. Compl. 10 ¶ 42, as well as other allegations of ways in which Mr. Smith "had a hand in each act of retaliation", *see* Opp'n at 15, similarly do not demonstrate how the allegedly improper actions were "solely for his own benefit" and that "benefit to the corporation played no role therein." *See Malik*, 202 F.3d at 110 (citing *Espinosa v. Connecticut Coll.*, No. 522872, 1994 WL 320222, at *5 (Conn. Super. Ct. June 27, 1994)). Ms. Turner has not specifically pled that Mr. Smith acted to achieve "financial gain" or acted out of "personal animus." *Bennett v. Beiersdorf, Inc.*, 889 F. Supp. 46, 52 (D. Conn. 1995) (citing *Murray v. Bridgeport Hosp.*, 40 Conn. Supp. 56, 61 (Conn. Super. Ct. 1984)). As a result, her conclusory allegations are not sufficient to bring this claim against Mr. Smith, who is an agent of the Connecticut Lottery Corporation, absent clearer factual allegations to the contrary.

Accordingly, Defendants' motion to dismiss will be granted as to the third count.

### D.  Count Four: Negligent Infliction of Emotional Distress ("NIED")

To state a claim of negligent infliction of distress, a plaintiff must plead that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Hall v. Bergman*, 296 Conn. 169, 182 n.8 (2010) (quoting *Carrol v. Allstate Ins. Co.*,

262 Conn. 433, 444 (2003)); *accord Tyus v. Newton*, No. 3:13-cv-1486 (SRU), 2015 WL

1471643, at *13 (D. Conn. Mar. 31, 2015) (quoting *Carrol*, 262 Conn. at 444).

In the employment context, however, claims of negligent infliction of emotional distress

are more limited, and "arise[] only where [they are] based upon unreasonable conduct of the

defendant in the termination process." *Parsons*, 243 Conn. at 88 (quoting *Morris v. Hartford*

*Courant Co.*, 200 Conn. 676, 681–82 & n. 4 (1986)). And, if the alleged termination is premised

on constructive discharge, rather than actual termination, a plaintiff may not bring a claim for

negligent infliction of emotional distress as a matter of law.[9] *See Sawka v. ADP, Inc.*, No. 3:13-

CV-754 (AWT), 2014 WL 3845238, at *6 (D. Conn. Aug. 5, 2014) (as a matter of law,

"[plaintiff] may not bring a claim for negligent infliction of emotional distress premised on his

constructive discharge"); *Gonzalez v. Lecoq Cuisine Corp.*, No. FBTCV136037490S, 2014 WL

2854124, at *13 (Conn. Super. May 16, 2014) ("Connecticut law has now firmly rejected the

position that constructive discharge may qualify as a termination for the purposes of NIED[.]"

(internal quotation marks omitted)).

Ms. Turner's only claim of termination in this case is that of constructive discharge. *See*

Second Am. Compl. Therefore, her negligent infliction of emotional distress claim fails as a

matter of law.

Accordingly, Defendants' motion to dismiss will be granted as to the fourth count.

### E.  Count Five: Intentional Infliction of Emotional Distress ("IIED")

---

[9] Ms. Turner cites several cases to support her contention that constructive discharge may be a basis for a claim of negligent infliction of emotional distress, *see* Opp'n at 23–24, including *Walsh v. Long ex rel. St. Francis Care*, No. CV-02-0815945-S, 2002 WL 31875302 (Conn. Super. Ct., Nov. 26, 2002), *Perodeau v. Hartford*, 259 Conn. 729 (2002), *Pecoraro v. New Haven Register*, 344 F. Supp. 2d 840, 846 (D. Conn., 2004), and *Michaud v. Farmington Community Insurance Agency*, No. CV-01-0806951-S, 2002 WL 31415478 (Conn. Super. Ct., Sept. 25, 2002), but all of those cases predate *Sawka* and *Gonzalez*.

Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted).

There is a "high threshold" for extreme and outrageous conduct in Connecticut law. *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012); *see also Stein v. Allen*, No. FSTCV176033418S, 2018 WL 4038364, at *3 (Conn. Super. Ct. Aug. 2, 2018) (noting that the trial court has a "gatekeeper function" in IIED claims). The Connecticut Supreme Court has held that conduct will only be considered extreme and outrageous under state law if it "exceeds all bounds usually tolerated by decent society." *Appleton*, 254 Conn. at 210–11 (internal quotation marks and citation omitted). And, it is the defendant's "conduct, not the motive behind the conduct[,]" which courts must evaluate in making this determination. *See Armstead v. Stop & Shop Cos., Inc.*, No. 3:01-cv-1489, 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) (citation omitted). "Even conduct which is unlawful may not be labeled 'extreme and outrageous' unless it has a natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." *Hamilton v. Town of Hamden*, No. 3:08-cv-164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19, 2008) (internal quotation marks and citation omitted).

Defendants argue that, even if Mr. Smith's conduct is found to be improper under federal or state law, Plaintiff's allegations about Mr. Smith's conduct are insufficiently extreme and outrageous to survive a motion to dismiss. Mot. to Dismiss at 20–22.

The Court agrees.

Ms. Turner has alleged that Defendants improperly suspended her for whistleblowing conduct and for a time period exceeding state regulatory limits; failed to provide a reason as to why she was suspended; staged a "humiliating spectacle" at which she was required to turn in her key in front of other employees; retained a law firm to conduct an investigation "for the purpose of broadly disseminating the inaccurate message that Ms. Turner lacked credibility"; and provided her suspension letter to the Hartford Courant for publication. *See* Second Am. Compl. ¶¶ 14–32; *id.* 10 ¶ 42. These allegations indicate conduct that is potentially unlawful or influenced by an improper motive, but not "extreme" or "outrageous" as defined under state law. *See Appleton*, 254 Conn. at 211 (upholding summary judgment for defendants on IIED claim where the defendant allegedly "made condescending comments to [the plaintiff] in front of [her] fellow colleagues questioning [her] vision and ability to read", "telephoned the plaintiff's daughter, representing that the plaintiff had been acting differently and should take a few days off from work", "telephoned the police, who came to the school and escorted the plaintiff out of the building to her car", "subjected [plaintiff] to two psychiatric examinations at the request of the board[;] [and] was forced to take a suspension and a leave of absence and, ultimately, forced to resign." (internal quotation marks omitted)); *see also Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 10 (D. Conn. 2011) ("Generally, personnel actions . . . that fall[ ] within the reasonably expected vicissitudes of employment, . . . even if unlawful, are usually not deemed extreme and outrageous conduct." (internal quotation marks and citation omitted)); *Parsons*, 243

Conn. at 88–89 ("The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (internal quotation omitted)).

Accordingly, Defendants' motion to dismiss will be granted as to the fifth count.

### F.  Count Six: Defamation

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004) (citing *QSP, Inc. v. Aetna Cas. & Surety Co.*, 256 Conn. 343, 356 (2001)).

Ms. Turner argues that Defendants defamed her when they provided Mr. Smith's suspension letter from July 19, 2019 to the Hartford Courant. *Id.* 16–17 ¶¶ 36–47. Ms. Turner argues that the statement in the letter that she was "placed on administrative leave . . . pursuant to Conn. Agencies Regs. § 5-240-5a(f)" led to a defamatory inference that Ms. Turner was so dangerous that she needed to be barred from the Lottery building. Opp'n at 28.

Defendants argue that Plaintiff's defamation claim should be dismissed because the alleged letter contains only true information, and, regardless of whether Ms. Turner was appropriately suspended under Connecticut Agencies Regulations § 5-240-5a(f), she concedes in her Second Amended Complaint that she was suspended under this regulation. Mot. to Dismiss at 24–27. Defendants further argue that any publication of the statement was protected by immunity as a response to a Freedom of Information Act ("FOIA") request and/or an intra-corporation communication privilege under state law. *Id.*

The Court disagrees.

Ms. Turner's allegations are based not on a contention that the statement in the letter was expressly false, but rather on an alleged defamatory implication. A true statement cannot be defamatory, but, in some circumstances, "even a technically true statement can be so constructed as to carry a false and defamatory meaning by implication[,]" for example, "by omitting . . . key facts." *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015) (citing *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 322–23 (1984); Robert D. Sack, *Sack on Defamation* § 3:8 (4th ed. 2010)). The letter omits the reason for the suspension, which, incidentally, is required under the regulation itself. *See* Conn. Agencies Regs § 5-240-5a(f) ("Following a decision to place the employee on such leave, the appointing authority shall provide written notice to the employee stating the reasons for the leave . . . ."). Without this information, a reader could reasonably draw an inference that Ms. Turner's "presence at work could be harmful to the public, [or to] the welfare, health or safety of . . . state employees or state property[,]" Conn. Agencies Regs § 5-240-5a(f)—i.e., that she was dangerous. Although a reader may not know the regulation cited in the letter, a reader could look it up, as the regulations are available publicly, and understand its implication. Ms. Turner therefore has alleged this first prong of a claim for defamation.

Defendants' defenses of immunity and privilege also fail. Taking the allegations in the light most favorable to Ms. Turner, it is not clear whether the letter was released to the Hartford Courant as a result of a FOIA request. Ms. Turner alternatively alleges either that Matt Stone, General Counsel of the Lottery, provided the letter to the Hartford Courant at the direction of Mr. Smith, or that it was published through a FOIA request. Second Am. Compl. 16 ¶¶ 37–39. The factual issue of how the letter was released to the Hartford Courant cannot be resolved at this stage of the proceedings, and therefore the Court need not address the parties' disagreement as to

28

whether any immunity exists for publication under the FOIA request. The Court further need not address whether the publication of the letter to Ms. Turner constituted defamation, as this allegation is pled as an alternative to a primary publication to the Hartford Courant. *Id.* ¶ 39.

Accordingly, Defendant's motion to dismiss count six will be denied.

### G. Count Seven: 42 U.S.C. § 1983

#### 1. Violation of a Constitutional Right

To establish a claim under § 1983, Plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States[] and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted); *Mikolinski v. Town of Naugatuck*, No. 3:98-cv-1094 (PCD), 2000 WL 630923, at *1 (D. Conn. Mar. 30, 2000) ("To state a claim under § 1983, plaintiffs must sue a person, who acts under state law, to deprive them of their civil rights."). "[A] complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient . . . ." *Alfaro Motors, Inc. v. Ward.*, 814 F.2d 883, 887 (2d Cir. 1987).

Defendants argue that Plaintiff has failed to state a claim under § 1983, as there "are no factual allegations in Count Seven" that specifically allege deprivation of a federal constitutional right. Mot. to Dismiss at 28. Defendant overlooks, however, that this count incorporates the allegations contained within Ms. Turner's claim of wrongful discipline in violation of the First Amendment under Connecticut General Statutes § 31-51q. *See* Second Am. Compl. at 17; *see also Trusz v. UBS Realty Inv'rs, LLC*, 319 Conn. 175, 212–215 (2015) (§ 31-51q protects an employee's whistleblower speech when it is "on a matter of public concern and implicates an employer's 'official dishonesty . . . other serious wrongdoing, or threats to health and safety.'"

(quoting *Garcetti v. Ceballos*, 547 U.S. 410, 435 (2006) (Souter, J., dissenting)) (alteration in original)).

To the extent that the Lottery is a state actor, which Defendant has not challenged here, Ms. Turner's claim of violation of her First Amendment rights under § 1983 is analogous to her § 31-51q claim. *See Cotto v. United Techs. Corp.*, 48 Conn. App. 618, 629 (1998) ("In deciding whether the allegations of the plaintiff's complaint [under § 31–51q] state a cause of action for the deprivation of a constitutionally protected right, it is instructive to review federal and state cases arising under 42 U.S.C. § 1983 because § 31–51q is analogous."); *accord Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 116 (2d Cir. 2004) (citing the same); *cf. Ting v. Univ. of Bridgeport*, No. 3:11-cv-20 (CFD), 2011 WL 2222309, at *2 (D. Conn. June 7, 2011) ("In *Bracey,* the defendant was a state government defendant and, therefore, in addition to liability under section 31–51q for First Amendment retaliation, the Second Circuit noted that the defendant could also have been liable on the same basis pursuant to 42 U.S.C. § 1983. Here, the University of Bridgeport is a private entity (not a government defendant) and, thus, is not a state actor subject to liability under § 1983."). Ms. Turner therefore has alleged violation of her First Amendment rights to support a claim under 42 U.S.C. § 1983.

### 2.  Liability as to Defendant Smith

With respect to Count Seven, Defendants further argue that any claims against Mr. Smith in his individual or official capacity should be dismissed. Mot. to Dismiss at 8–12. Ms. Turner clarifies in her memorandum in opposition to the motion to dismiss that her claims are brought only against Mr. Smith in his individual capacity, so the Court need only address that argument here. Opp'n at 13. Specifically, the Court will address whether Mr. Smith is entitled to qualified

immunity for Ms. Turner's claim against him in his individual capacity under 42 U.S.C. § 1983 for violation of her First Amendment rights.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In addition, qualified immunity protects state actors when it was "objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of N. Y.*, 612 F.3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*)).

In considering qualified immunity on a motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the

plaintiff's claim and those that would defeat the qualified immunity defense. *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015).

Defendants contend that Ms. Turner has failed to allege sufficient personal involvement by Mr. Smith in the alleged constitutional violation, and that he is entitled to qualified immunity for allegedly taking adverse action against Ms. Turner because of her alleged report to the FBI about alleged potential misconduct by Mr. Farricker. Mot. to Dismiss at 10–12; Reply at 1–2.

The Court disagrees.

In 2019, when Mr. Smith allegedly took retaliatory action against Ms. Turner because of her alleged report to the FBI, and as a result of the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), "all reasonable officials were put on notice that a public employee's speech on a matter of public concern would be protected so long as the speech was made as a citizen and not pursuant to the employee's official duties." *Brown v. Off. of State Comptroller*, 211 F. Supp. 3d 455, 473 (D. Conn. 2016),

Following *Garcetti*, the Second Circuit held that "the inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a bright[-]line rule[.]" *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). Rather, in *Ross*, the Second Circuit held that the inquiry into whether an employee is speaking "pursuant to [their] official duties", is "a practical one[,]" involving a fact-intensive inquiry into, *inter alia*, "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Id.* at 305– 06 (citations omitted). The fact-intensive nature of this inquiry, however, does not preclude the right from being clearly established.

> The fact that *Garcetti*'s "official duties" standard is difficult to apply does not prevent the underlying right from being clearly established. The difficulty in applying *Garcetti* relates to the factual inquiry regarding what types of speech will be found to be "pursuant to

> official responsibilities." [. . .] That difficulty is not present at the
> motion to dismiss stage, where [the court] must take as true the
> allegations that [the plaintiff] was not speaking pursuant to her
> official duties.

*Brown*, 211 F. Supp. 3d at 474 (internal citations omitted). Ms. Turner plausibly has alleged that

the report to the FBI "was in no way a routine or ordinary aspect of her duties as an employee of

the Lottery[,]" and therefore outside of her official duties. Second Am. Compl. 17 ¶ 33. She

further has alleged specific personal involvement of Mr. Smith in causing the alleged

constitutional violation, most evidently because he allegedly made the decision to suspend Ms.

Turner and wrote the suspension letter. *See id.* ¶¶ 13–28. Therefore, at least at this stage of the

proceedings, the Court finds that Ms. Turner has alleged sufficient facts to preclude a finding of

qualified immunity as to Mr. Smith.

Accordingly, Defendants' motion to dismiss Plaintiff's claims under § 1983 brought

individually against Mr. Smith will be denied.

### H.  Statutory Immunity under Connecticut General Statutes § 1-125

As a final matter, the Court addresses whether Mr. Smith is entitled to individual

immunity under Connecticut General Statutes § 1-125 for remaining state law claims in Counts

One through Six.[10]

Connecticut General Statutes § 1-125 provides that:

> [D]irectors, officers and employees of . . . the Connecticut Lottery
> Corporation . . . shall not be liable personally . . . or be subject to
> any personal liability or accountability by reason of the issuance
> thereof, nor shall any director or employee of the agency . . . be
> personally liable for damage or injury, not wanton, reckless,
> wil[l]ful or malicious, caused in the performance of his or her duties

---

[10] As the Court has already dismissed Ms. Turner's common law claim of constructive discharge (Count Two), tortious interference with contract (Count Three), negligent infliction of emotional distress (Count Four), and intentional infliction of emotional distress (Count Five) for failure to state a claim, as well as Ms. Turner's claim under § 31-51q of the Connecticut General Statutes against Mr. Smith individually (Count One), the Court only addresses this argument in regard to Ms. Turner's common law claim of)defamation (Count Six).

> and within the scope of his or her employment or appointment as
> such director, officer or employee. . . .

Conn. Gen. Stat. § 1-125.

No Connecticut court has definitively determined the meaning of "wanton, reckless,

willful or malicious" as used in § 1-125. In the common law context, however, the Connecticut

Supreme Court has stated that:

> In order to establish that the defendants' conduct was wanton,
> reckless, wi[l]lful, intentional and malicious, the plaintiff must
> prove, on the part of the defendants, the existence of a state of
> consciousness with reference to the consequences of one's acts . . . .
> [Such conduct] is more than negligence, more than gross negligence
> . . . . [I]n order to infer it, there must be something more than a failure
> to exercise a reasonable degree of watchfulness to avoid danger to
> others or to take reasonable precautions to avoid injury to them . . .
> . It is such conduct as indicates a reckless disregard of the just rights
> or safety of others or of the consequences of the action . . . . [In sum,
> such] conduct tends to take on the aspect of highly unreasonable
> conduct, involving an extreme departure from ordinary care, in a
> situation where a high degree of danger is apparent . . . .

*Shay v. Rossi*, 253 Conn. 134, 181 (2000) (alteration in original), *overruled on other grounds*

*by Miller v. Egan*, 265 Conn. 301 (2003) (quoting *Dubay v. Irish*, 207 Conn. 518, 532–33

(1988)).

Defendants argue that Mr. Smith is entitled to statutory immunity on all state law counts,

as Ms. Turner's Second Amended Complaint fails to demonstrate that Mr. Smith's conduct was

wanton, reckless, willful or malicious under this common law definition, and that "there are no

allegations that Mr. Smith had a self-serving motive beyond the ambit of the employment

context, nor that he misused his authority." Mot. to Dismiss at 13 (internal quotation marks and

citations omitted). Ms. Turner responds that she has pled sufficient facts to infer wanton,

reckless, willful, and malicious conduct, including, *inter alia*, that Mr. Smith "engag[ed] in a

sustained campaign to ruin her reputation and career by spreading lies about her . . . because . . .

34

she once tried to keep the Lottery safe from corruption." Opp'n at 10 (citing Second Am. Compl. ¶¶ 15, 19, 20). She further cites a need for discovery to demonstrate further the motivation behind Mr. Smith's conduct. *Id.*

Ms. Turner has made multiple allegations about conduct that plausibly could infer an improper motive or an extreme departure from ordinary care, including that Mr. Smith improperly suspended her for whistleblowing conduct; staged a "humiliating spectacle" at which she was required to turn in her key in front of other employees; and authorized retention of a law firm to conduct an investigation "for the purpose of broadly disseminating the inaccurate message that Ms. Turner lacked credibility." *See* Second Am. Compl. ¶¶ 14–32; *id.* 10 ¶ 42. These allegations, taken together, are sufficient to survive a motion to dismiss, even if each allegation individually may not infer wanton, reckless, willful, or malicious intent, and Ms. Turner is entitled to discovery to further inquire as to what Mr. Smith's motive may have been.

Accordingly, Defendants' motion to dismiss remaining state law claims as to Mr. Smith individually will be denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Ms. Turner's claim under § 31-51q of the Connecticut General Statutes is **DENIED** as to the Lottery but **GRANTED** as to Mr. Smith individually (Count One). Defendants' motion to dismiss further is **DENIED** as to Ms. Turner's claims of defamation (Count Six) and violation of First Amendment rights under 42 U.S.C. § 1983 (Count Seven) for all Defendants.

Defendants' motion to dismiss Ms. Turner's common law claims of constructive discharge (Count Two), tortious interference with contract (Count Three), negligent infliction of

emotional distress (Count Four), and intentional infliction of emotional distress (Count Five) is

**GRANTED** as to all Defendants.

All dismissed claims are dismissed without prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of September, 2021.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge