UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CHELSEA TURNER,
    *Plaintiff*,

v.

CONNECTICUT LOTTERY
CORPORATION and GREGORY
SMITH,
    *Defendants*.

No. 3:20-cv-1045 (VAB)

**RULING AND ORDER ON DISCOVERY DISPUTE**

On February 3, 2022, the Court held a discovery conference with counsel for Chelsea Turner ("Plaintiff"), as well as with counsel for the Connecticut Lottery Corporation (the "Lottery") and Gregory Smith (collectively, "Defendants"), to address a pending discovery dispute related to third-party subpoenas served by Ms. Turner. Min. Entry, ECF No. 85 (Feb. 3, 2022). Mr. Smith and the Lottery object to the subpoenas' request for production of documents relating to an internal investigation, which have been provided to the Court for *in camera* review, on the basis of attorney-client privilege and the work-product doctrine. Defs.' Suppl. Br. Regarding Privilege Disc. Dispute, ECF No. 87 (Feb. 11, 2022) ("Def. Br.").

For the reasons explained below, the Defendants will not be required to produce the documents provided to the Court for *in camera* review.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On January 13, 2020, Ms. Turner filed a Complaint in Connecticut state court against Defendants. Compl., ECF No. 1-1 (Jan. 13, 2020). The Complaint sets forth various claims under 42 U.S.C. § 1983 and Connecticut statutory employment law, as well as claims of constructive

1

discharge, tortious interference, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation. *Id.*

As relevant to this dispute, Ms. Turner, a former Vice President of the Lottery, *see* Third Am. Compl. ¶ 1, ECF No. 68 (Oct. 13, 2021) ("Third Am. Compl."), alleges that in or about 2014, she spoke with the Federal Bureau of Investigation ("FBI") regarding ethical and other concerns she had with the former chairman of the Lottery, Frank Farricker, *see id.* ¶¶ 4–7. She alleges that after she "testif[ied] at a hearing conducted by the Connecticut Commission on Human Rights and Opportunities ('CHRO')," *id.* ¶ 8, where she described these concerns, the Lottery "placed [her] on administrative leave" in July of 2019, *id.* ¶ 14. Ms. Turner alleges that the Lottery later, in September of 2019, "retained the law firm Halloran and Sage ('Halloran') purportedly to investigate" the statements made by Ms. Turner at the CHRO hearing, *id.* ¶ 34, and that Halloran published an "investigation report" as to these statements and other conduct (the "Halloran Report"), *id.* ¶¶ 34–37.

On July 23, 2020, Defendants removed the case to this Court. Notice of Removal, ECF No. 1 (July 23, 2020).

On September 9, 2020, the Court adopted an initial scheduling order, setting the close of discovery for August 13, 2021. Initial Scheduling Order, ECF No. 19 (Sept. 9, 2020).

On October 15, 2020, the parties jointly moved for a discovery conference. Joint Mot. for Disc. Conf., ECF No. 23 (Oct. 15, 2020) ("Joint Mot."). As the parties explained, Ms. Turner had served a set of third-party subpoenas to third parties Robinson and Cole, LLP, Halloran, and the Connecticut Department of Consumer Protection ("DCP") in the state court action before removal. *Id.* at 1. Defendants moved to quash the Halloran subpoena in the state court action and

intended to move to quash the Robinson and Cole and DCP subpoenas in the present action. *Id.* The parties framed the issues for resolution as:

> (1) whether communications between Halloran and Sage and employees of the Connecticut Lottery Corporation as part of an internal investigation are protected by the attorney-client privilege; (2) whether draft investigation notes and drafts of the investigation report by Halloran and Sage are protected attorney-work product; (3) whether the communications and documents referenced above were prepared in anticipation of litigation; (4) whether Plaintiff has established a substantial need for the production of the requested documents; and (5) whether Plaintiff's third-party subpoenas are overly broad and unreasonable.

Joint Mot. at 2.

On October 16, 2020, the Court ordered the parties to submit initial briefs as to the discovery dispute by October 23, 2020, and to submit responses by October 30, 2020. Order, ECF No. 24 (Oct. 16, 2020). The Court also scheduled a discovery videoconference for November 10, 2020. *Id.*

After the discovery conference, the Court ordered the parties to, by December 4, 2020, indicate whether they could resolve the outstanding discovery disputes. Order, ECF No. 34 (Nov. 10, 2020).

The parties reported that they were able to resolve in part the outstanding discovery disputes, and, on March 30, 2021, filed a second motion for a discovery conference to address the remaining discovery issues. *See* Joint Status Report, ECF No. 39 (Dec. 4, 2020); Joint Mot. for Disc. Conf., ECF No. 43 (Mar. 30, 2021). The parties remained unable to agree on whether the Lottery must produce drafts of the Halloran Report circulated within the Lottery, in addition to all related correspondence and/or notes, and related documents. *See* Joint Status Report, ECF No. 39 (Dec. 4, 2020); Joint Mot. for Disc. Conf., ECF No. 43 (Mar. 30, 2021).

The Court held a second discovery conference on April 8, 2021. *See* Min. Entry, ECF No. 48 (Apr. 8, 2021). At that conference, the Court ordered the Defendants to submit the disputed documents for *in camera* review. *See* Order, ECF No. 49 (Apr. 8, 2021).

Before reviewing the *in camera* documents, the Court granted in part Defendants' motion to dismiss on September 10, 2021, *see* Order, ECF No. 61 (Sept. 10, 2021) ("Mot. to Dismiss Order"),[1] and subsequently granted Plaintiff's motion to amend the Complaint over Defendants' objection on December 14, 2021, Order, ECF No. 81 (Dec. 14, 2021).

Following these rulings, only three claims remain: 1) violation of Conn. Gen. Stat. § 31-51q against the Lottery; 2) defamation against both Defendants; and 3) violation of 42 U.S.C. § 1983 against both Defendants. *See* Mot. to Dismiss Order; *see also* Third Am. Compl. (alleging claims under Conn. Gen. Stat. § 31-51q; 42 U.S.C. § 1983; and Connecticut common law (defamation)).

The Court, upon completing its *in camera* review of the documents, ordered a discovery conference on February 3, 2022. *See* Min. Entry, ECF No. 85 (Feb. 3, 2022).

Following the discovery conference, the Court ordered the Defendants to supplement, by February 11, 2022, their previous filings with regard to the assertion of attorney-client privilege, "specifically focusing on communications between Mr. Smith and members of the Task Force[2] that had not already been disclosed and which the Defendants believe should remain privileged." Order, ECF No. 86 (Feb. 3, 2022). Under the same scheduling order, the Court allowed the

---

[1] This decision also is available at *Turner v. Conn. Lottery Corp.*, No. 3:20-CV-1045 (VAB), 2021 WL 4133757, at *1 (D. Conn. Sept. 10, 2021).

[2] According to Defendants' briefing on this discovery dispute, the "Task Force" was comprised of "recently appointed Board Members to work closely with Mr. Smith to develop the scope of [the] investigation by [Halloran and Sage]." *See* Reply to Pl.'s Resp. to Defs.' Suppl. Br. Regarding Privilege Disc. Dispute at 5, ECF No. 93 (Feb. 23, 2022) ("Def. Reply").

Plaintiff to file any response by February 18, 2022, and the Defendants to file a reply by February 23, 2022. *Id.*

On February 11, 2022, Defendants filed a supplemental memorandum regarding the assertion of attorney-client privilege and the work-product doctrine. Def. Br.

On February 18, 2022, Plaintiff filed a response. Pl.'s Resp. to Defs.' Suppl. Br. Regarding Privilege Disc. Dispute, ECF No. 91 (Feb. 18, 2022) ("Pl. Resp.").

On February 23, 2022, Defendants filed a reply in further support of their assertion of attorney-client privilege and work-product doctrine. *See* Reply to Pl.'s Resp. to Defs.' Suppl. Br. Regarding Privilege Disc. Dispute, ECF No. 93 (Feb. 23, 2022) ("Def. Reply").

## II.   STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); Advisory Committee Notes to 2015 Amendments. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-CV-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792 (WHP) (JCF), 2015 WL 7871037 at *2 (S.D.N.Y. Dec. 12, 2015)). "The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive . . . ." *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (internal citations, quotation marks, and alterations omitted).

In handling pre-trial disputes, "[a] trial court enjoys wide discretion." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992); *see In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery."); *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion.").

### III.   DISCUSSION

Defendants have sought to protect the communications and documents at issue from discovery on the basis of both attorney-client privilege and the work-product doctrine. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). "[A]s a general matter[,] the attorney-client privilege applies only to communications between lawyers and their clients . . . ." *Id.*

In contrast, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). "Analysis of one's case 'in anticipation of litigation' is a classic example of work product . . . and receives heightened protection under Fed. R. Civ. P. 26(b)(3)." *Id.* at 1196–97 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)).

Defendants argue that drafts of the Halloran Report circulated within the Lottery, as well as correspondence between the Task Force and Halloran regarding drafts of the report, fall within the protection of the attorney-client privilege and attorney-work product doctrines. *See*

Def. Br. at 4–12. Defendants also have argued, in the alternative, that the requested discovery should be limited as falling outside the scope of discovery permitted by Federal Rule of Civil Procedure 26. *See* Defs.' Initial Br. Regarding Disc. Dispute at 7 n.2, ECF No. 28 (Oct. 23, 2020); *see also* Defs.' Resp. to Pl.'s Position Br. for Disc. Conf. at 3, ECF No. 32 (Oct. 30, 2020).

In response, Ms. Turner argues that these documents "were not prepared in anticipation of litigation, and thus [are] not protected as attorney work product, and did not constitute legal work, and thus are not protected by the attorney-client privilege." Pl. Resp. at 2. Ms. Turner also argues that she has demonstrated a sufficient need for the documents where "[k]nowing what information Halloran learned – but chose to omit from the Report – might reveal whether the Defendants concocted the whole performance as a way to save face while diminishing Ms. Turner's reputation." *Id.* at 14.

The Court disagrees.

Since this lengthy discovery dispute began, this case has narrowed in scope; following the Court's ruling and order on the motion to dismiss, Ms. Turner's only remaining claims are for violation of her First Amendment rights under Connecticut General Statutes § 31-51q and 42 U.S.C. § 1983, and for defamation under Connecticut common law. *See* Mot. to Dismiss Order; *see also* Third Am. Compl. In light of this development, and following review of the documents produced *in camera*, regardless of whether the requested documents are privileged or protected by the work-product doctrine, the requested discovery is not "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

7

Ms. Turner's remaining claims arise from two sets of alleged events: (1) the allegedly retaliatory suspension in July of 2019, as well as potentially retaliatory events thereafter; and (2) the Defendants' alleged defamation through provision of Ms. Turner's suspension letter to the Hartford Courant for publication in July of 2019. *See* Mot. to Dismiss Order at 10–15, 27–33; *see also* Third Am. Compl. What information a third party, Halloran, learned from the Lottery but chose to omit from the Report has little, if anything, to do with why the Lottery allegedly retaliated against Ms. Turner, placed her on administrative leave, and/or published her suspension letter to the Harford Courant. *See Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-CV-1767 (VAB), 2019 WL 4143035, at *10 (D. Conn. Aug. 30, 2019) (Under Rule 26(b)(1), "[the] Court must determine whether the discovery sought is proportional to the needs of the case," and is permitted to limit certain discovery that is "not proportional . . . [e]ven if relevant to th[e] case." (quoting *Metcalf v. Yale Univ.*, No. 3:15-CV-1696 (VAB), 2017 WL 6614255, at * 2 (D. Conn. Dec. 27, 2017)); *see also, e.g.*, *Torcasio v. New Canaan Bd. of Ed.*, No. 3:15-CV-00053 (AWT), 2016 WL 312102, at *3 (D. Conn., Jan. 26, 2016) (court granted motion to quash subpoena, finding that the testimony sought bore little relevance to the claims in the case and was "nothing more than a fishing expedition").

Indeed, based on the Court's *in camera* review, the information sought is of little "importance . . . in resolving the issues" that remain to be litigated, because, at best, the Court could require production of only fragments of the voluminous requested correspondence.[3] *See*

---

[3] The vast majority of these documents and communications likely are protected either by the attorney-client privilege or the work-product doctrine. Communications produced for the Court's review include e-mails between Mr. Smith, the client, and Halloran, the lawyer, which are protected by attorney-client privilege. *See Mejia*, 655 F.3d at 132 ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." (citing *In re Cnty. of Erie*, 473 F.3d at 419). While attorney-client privilege does not apply where a "prudent person [has] a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof," *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731

*Taveras v. Semple*, No. 3:15-CV-531 (VAB), 2020 WL 3489529, at *7 (D. Conn. June 27, 2020) (internal alterations and quotation marks omitted); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y. 2016) ("Proportionality focuses on the marginal utility of the discovery sought."); *Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360 (KAD), 2020 WL 4818362, at *1 (D. Conn. Aug. 17, 2020) ("Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." (quoting *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 49 (E.D.N.Y. 2018) (quotation marks and citation omitted)); *see also In re Catalyst Managerial Servs., DMCC*, 680 F. App'x. 37, 40 (2d Cir. 2017) (affirming a discovery ruling where the district court was satisfied "that any . . . proportionality threshold[ ] [had been] met").

As a result, the Court exercises its discretion to limit the production of the requested documents.

Accordingly, the Defendants' objection to producing drafts of the Halloran Report circulated within the Lottery, in addition to all related correspondence and/or notes, and related documents, will be sustained.

---

F.2d 1032, 1039 (2d Cir. 1984), there is no criminal investigation in this case. And Ms. Turner has not alleged fraud or misrepresentation in the current amendment to her Complaint; indeed, her only remaining legal claims arise under Conn. Gen. Stat. § 31-51q, 42 U.S.C. § 1983, and the Connecticut common law doctrine of defamation. *See* Mot. to Dismiss Order; Third Am. Compl.

To the extent that Ms. Turner seeks communications between members of the Lottery, rather than between Halloran and the Lottery, the drafts of the Halloran Report attached to those communications likely are protected by the work-product doctrine, as the Court's *in camera* review reveals the report was created in "anticipation of, and in connection with" litigation, *Miller v. Praxair, Inc.*, No. 305-CV-402 CFD, 2007 WL 685187, at *1 (D. Conn. Mar. 2, 2007). Even if the requested discovery is relevant and proportional, Ms. Turner has not demonstrated the requisite "substantial need" necessary to overcome that protection at this time, especially where she is able to depose Mr. Smith and individuals interviewed in the course of the investigation. *Adlman*, 134 F.3d at 1196 (after determining a document is eligible for the work-product privilege, the court then must "assess whether the party seeking discovery has made an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship").

## IV. CONCLUSION

For the foregoing reasons, the Defendants will not be required to produce the documents provided to the Court for *in camera* review.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of April, 2022.

                                                  /s/ Victor A. Bolden
                                                  Victor A. Bolden
                                                  United States District Judge